UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-20319-CIV-MORENO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

HOWARD N. ROBINSON, M.D., and VALERIE
MCALLISTER,

    Defendants.
_____/

## ORDER DENYING MOTIONS TO DISMISS

The United States brought this case for civil penalties for violations of the Controlled Substances Act, codified at 21 U.S.C. §§ 801-904. Prior to filing this suit, the Government instituted administrative proceedings in the Drug Enforcement Administration to revoke Defendant Howard N. Robinson, M.D.'s registration. Based on the administrative proceedings, Defendants have moved to dismiss arguing the doctrines of *res judicata* and collateral estoppel bar this suit. Defendant Valerie McAllister has also moved to dismiss arguing the Government's case cannot be brought against her because she is not a registrant under the Controlled Substances Act. The Court disagrees with the Defendants' arguments and finds the case can go forward as to both Defendants.

THIS CAUSE came before the Court upon Defendants' Motions to Dismiss **(D.E. No. 8, 11)**, filed on **February 24, 2012** and **March 8, 2012**.

THE COURT has considered the motions, the responses, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motions to dismiss are DENIED. Defendants shall file an answer to the complaint by no later than **September 24, 2012**.

## I. BACKGROUND

The United States brought this action against Valerie McAllister, a nurse anesthesist and the sole owner of the Premier Center for Cosmetic Surgery, Inc. and Howard N. Robinson, M.D., a plastic surgeon employed by the Premier Center, for multiple violations of the recordkeeping requirements of the Controlled Substances Act, 21 U.S.C. §§ 801-904. This is an action for civil money penalties under the Act against McAllister and Robinson.

McAllister and Robinson have each moved to dismiss the complaint. Robinson claims that a parallel administrative proceeding currently pending in the DEA before an Administrative Law Judge bars this civil action from proceeding under the doctrines of *res judicata* and collateral estoppel. McAllister adopts Robinson's arguments in her motion to dismiss and additionally argues that because she is not registered with the Drug Enforcement Administration ("DEA"), she cannot be liable under the Controlled Substances Act for the recordkeeping violations at the cosmetic center she owned and operated.

The Complaint in this case alleges that Robinson had a DEA registration for the purpose of possessing, distributing, and dispensing controlled substances. McAllister exercised "responsibility and authority for properly maintaining the controlled substance records of the Center, including DEA order forms (which Robinson would sign), invoices, and narcotics logs." Complaint at ¶ 4. The Complaint further alleges that McAllister determined when controlled substances needed to be ordered and verified and documented their receipt in the Premier Center's records. The United States also alleges that McAllister was responsible for the transfer of controlled substances between the Premier Center and another cosmetic surgery center she owned in Tampa, Florida. Both McAllister and Robinson were responsible for conducting an inventory of controlled substances both before and after patient procedures.

DEA began investigating McAllister when an individual contacted its Tactical Diversion Squad to report that the drugs Demerol and Fentanyl, both Schedule II controlled substances, were not being appropriately handled at the Premier Center. The individual reported that the drugs were being transferred between the Miami Premier Center and the other cosmetic surgery center owned by McAllister in Tampa. As a result, the individual reported that patients were moving during surgical procedures because they were receiving insufficient medication and that bloody gauzes and syringes were not being disposed of properly.

The DEA investigation and resulting audit found that McAllister and Robinson failed on multiple occasions to maintain proper records of controlled substances purchased, received, and dispensed at the Premier Center. As a result, the Complaint alleges that significant quantities of controlled substances could not be accounted for, including Demerol and Fentanyl, as well as Midazolam and Versed, Schedule IV controlled substances. The DEA investigation also revealed other violations of applicable regulations. Those violations included a failure to conduct a biennial inventory, a failure to segregate DEA order forms for Schedule II controlled substances from other records, a failure to properly complete DEA order forms to include the required information for Schedule II controlled substances, a failure to complete DEA order forms for the transfer of controlled substances between locations, and a failure to locate missing drugs as recorded on the Premier Center's narcotics log. Finally, the DEA investigation discovered a prescription written by Robinson to McAllister for the acknowledged purpose of office supply, which is prohibited by the law.

Following the investigation, DEA issued an Order to Show Cause on September 7, 2011 to allow Robinson the opportunity to rebut DEA's finding that his registration should be revoked because it was inconsistent with the public interest as set forth in 21 U.S.C. § 823(f). The Order to

Show Cause contained allegations in support of revoking Robinson's DEA registration, including the results of the DEA inspection and audit (but did not include the finding that Robinson had written a prescription for office supply). On November 29-30, 2011, the DEA held an administrative hearing.

On March 1, 2012, the Administrative Law Judge ("ALJ") issued a recommended decision. The ALJ found that DEA had sustained its burden in proving the facts set forth in the Order to Show Cause. More specifically, the ALJ found substantial evidence to support the allegations that Robinson failed to keep accurate records of controlled substances; failed to maintain inventories and records of controlled substances separately from other records; transferred controlled substances without complying with applicable recordkeeping requirements; improperly disposed of controlled substances; and improperly wrote a prescription for Demerol for office use. The ALJ also considered Robinson's acceptance of responsibility and the steps he took to remedy the deficiencies. The ALJ recommended against revoking the registration but that the registration should be maintained on a conditional basis.

## II. LEGAL STANDARD

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal,* 129 S. Ct. at 1950.

### III. LEGAL ANALYSIS

A. Collateral Estoppel and *Res Judicata*

The United States District Courts have original jurisdiction in cases to recover civil money penalties under the Controlled Substances Act. *See* 21 U.S.C. § 842(c)(1); 28 U.S.C. § 1355. Nevertheless, the Defendants are moving to dismiss this suit citing *res judicata* or claim preclusion and collateral estoppel or issue preclusion. Defendants cite *Astoria Fed. Sav. v. Solimino*, 501 U.S. 104, 107 (1991), where the Supreme Court stated that "[w]e have long favored application of the common law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." Defendants vehemently argue the United States is taking a second bite at the apple because the United States obtained a full and fair opportunity to litigate these issues. Of the Government's eleven count complaint, Defendants claim only one, Count 11, which was based on the prescription for office supplies, was not heard by the Administrative Law Judge. The Court disagrees with Defendants' position.

*Astoria* does not bar this suit from going forward. The administrative order is by its own terms a "Recommended Rulings, Findings of Fact, Conclusions of Law and Decision of the Administrative Law Judge." It is not final and is subject to review by the DEA Administrator. Moreover, *res judicata* cannot apply to these causes of action for civil penalties as there was no way to present those claims in an administrative tribunal given the statute creates original jurisdiction in this court. And even if there had been a final decision, collateral estoppel would serve only to

-5-

resolve those issues that had been previously litigated, rather than to dismiss the claims raised here in their entirety. Indeed, the recent ALJ findings, if adopted in a final decision, settle those issues in favor of the United States, validating the claims raised in this lawsuit.

1. Finality of Decision

Both *res judicata* and collateral estoppel require a final decision. As the Eleventh Circuit has explained , "For res judicata to bar a subsequent case, four elements must be present: '(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases.'" *Maldonado v. U.S. Attorney General*, 664 F.3d 1369, 1375 (11th Cir. 2011) (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1998)). Similarly, collateral estoppel requires that "(1) an identical issue was presented in the prior proceeding; (2) the issue was a critical and necessary part of the prior proceeding; (3) the issue was fully and fairly litigated in the previous proceeding; (4) the parties in the two proceedings were identical; and (5) a final decision was rendered by a court of competent jurisdiction." *Bryant v. CEO DeKalb Co.*, 575 F.3d 1281, 1303 (11th Cir. 2009). Although the decisions of administrative tribunals can qualify, courts have found the doctrines only apply in cases where the administrative decision is final. *See Astoria Fed. Sav.*, 501 U.S. at 107 (noting that it "has long favored application" of collateral estoppel "to those determinations of administrative bodies that have attained finality."); *Block v. U.S. Int'l Trade Comm'n*, 777 F.2d 1568, 1571-72 (Fed. Cir. 1985) (finding that collateral estoppel would not apply to underlying administrative decision that was not final); *Cohen v. New Mexico Dep't of Health*, 788 F. Supp. 2d 1245, 1253 (D.N.M. 2009) (finding collateral estoppel did not apply to agency proceedings that were not final).

The recommended decision of the ALJ is not final. The regulations that govern the

administrative proceedings state that the ALJ in reviewing Orders to Show Cause shall issue "his recommended rulings on the proposed findings of fact and conclusions of law; his recommended findings of fact and conclusions of law, with the reasons therefore; and his recommended decision." 21 C.F.R. § 1316.65(a)(1)-(3). Then the parties have twenty days from service to file exceptions to the recommended decision. 21 C.F.R. § 1316.66. It is the Administrator of the DEA who then publishes a final order in the Federal Register setting forth the final rule and the findings of fact and conclusions of law upon which it is based. 21 C.F.R. § 1316.67. There is no specified time frame for the issuance of the final order. Thus, the ALJ decision itself provides, "The issue ultimately to be adjudicated by the Administrator, with the assistance of this recommended decision, is whether the record as a whole establishes, by substantial evidence, that the Respondent's [registration] should be revoked as inconsistent with the public interest, as that term is used in 21 U.S.C. §§ 823(f) and 824(a)." *See* ALJ Recommended Decision at 2. None of these additional steps have taken place to finalize the order, and therefore the Court cannot grant the ALJ's Recommended Decision preclusive effect.

2. Claim Preclusion

Even if the Court were to find a final order, *res judicata* (or claim preclusion) does not apply because the United States could not have brought its civil penalty claims in the Administrative Proceedings. Claim preclusion applies only where a party could have raised, but did not raise, a claim in an earlier case. "It is by now hornbook law that the doctrine of *res judicata* 'bars the filing of claims which were raised or could have been raised in an earlier proceeding.'" *Maldonado*, 664 F.3d at 1375 (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999)). In *Maldonado*, the Eleventh Circuit emphasized that the doctrine of *res judicata* must be applied with greater flexibility in the context of administrative proceedings. *Id.* at 1377-78.

-7-

In this case, the Government could not have raised the claims it pursues in this action in the DEA proceeding. The Controlled Substances Act provides that a revocation of a registration is adjudicated in an administrative proceeding. 21 U.S.C. § 824(c). As the Act specifies, "Such proceedings shall be independent of, and not in lieu of, criminal prosecutions or other proceedings under this subchapter or any other law of the United States." *Id.* Pursuant to the Act, the administrative proceedings in this case were limited to the revocation of Robinson's registration – nothing more. Unlike the administrative proceedings, the Complaint in this case seeks civil penalties against Robinson for multiple violations of the recordkeeping provisions of the Controlled Substances Act. The Act imposes penalties for those violations as a method of preventing drug diversion. 21 U.S.C. § 842(c)(1); *United States v. Greenberg*, 334 F. Supp. 364, 366-67 (W.D. Pa. 1971) ("The purpose of the enactment of the 1970 Act was to provide a system for the control of drug traffic and to prevent the abuse of drugs. The statutory scheme envisioned by the Act is one of control through record keeping.").

District courts have original jurisdiction over claims for civil penalties for violations of the Act. 21 U.S.C. § 842(c)(1)(A); 28 U.S.C. § 1355. The law precludes an administrative law judge from adjudicating a claim for civil penalties. The jurisdictional provisions, along with the Act's admonition that administrative proceedings involving registration revocations are "not in lieu of" other enforcement actions, clarify that the civil penalties claims presented in this case could not have been brought before the ALJ. Accordingly, the Court does not find that *res judicata* bars the claims raised in this Complaint.

3. Issue Preclusion

Issue preclusion serves to bar relitigation of identical issues that have already been fully and fairly litigated. *See Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1328 (11th Cir. 2003); *Bryant*, 575

-8-

F.3d at 1302 (finding issue preclusion not to apply because the "issue before the hearing officer was distinct from the issue presented to the district court.").

Because the Court has already found that the claims in this case could not be adjudicated in the administrative proceedings regarding Robinson's registration, issue preclusion would only apply to bar the re-litigation of factual issues already determined by the ALJ, assuming those findings would be made final. A reading of the ALJ's recommended decision supports the factual allegations that give rise to this complaint. A finding that issue preclusion applies would only serve to satisfy the Government's burden in this case. Accordingly, the Court does not find issue preclusion bars this case from going forward and denies the motions to dismiss on those grounds.

B. Application of the Controlled Substances Act to McAllister

McAllister argues that because she is not a registrant, the Controlled Substances Act cannot be applied to her. She also argues that she cannot be held liable under the Act because she was acting as a representative of the Premier Center. The Court does not find either argument persuasive as the Controlled Substances Act applies to "all persons" and based on the allegations of McAllister's role at the Center.

1. Language of the Controlled Substances Act

Every claim for relief against McAllister in the Complaint's counts one through ten arise from 21 U.S.C. § 842(a)(5). That section states: "It shall be unlawful for any person . . . (5) to refuse or negligently fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required under this subchapter. . .." *Id.* The regulations that implement the Act define "person" as "any individual, corporation, government, or governmental subdivision or agency, business trust, partnership, association, or other legal entity." 21 C.F.R. §1300.01(b).

Lending support to the Government's position is *United States v. Moore*, 423 U.S. 122, 133 (1975). In *Moore*, the Supreme Court explained in a criminal case under section 841 of the Controlled Substances Act, that Congress selected certain subsections to apply to registrants and others to apply to all "persons." The provision that gives rise to the cause of action against McAllister, section 842(a)(5), includes the broader term of "any person" and does not limit application of the subsection to registrants.

Courts have analyzed the language of section 842(a)(5) and found that the plain language applies not just to registrants, but to all persons. *United States v. Blanton*, 730 F.2d 1425, 1434 (11th Cir. 1984) (holding that section 842(a)(5) applied to a physician who was not properly registered with the DEA); *United States v. Clinical Leasing Serv., Inc.*, 759 F. Supp. 310, 313-14 (E.D. La. 1990); *United States v. Stidham*, 938 F. Supp. 808, 814 (S.D. Ala. 1996); *United States v. Poulin*, 926 F. Supp. 246, 250 (D. Mass. 1996).

The *Clinical Leasing* court held the Controlled Substances Act "does not require that one who refuses or fails to make, keep, or furnish records be a 'registrant.' On the contrary, 21 U.S.C. § 842(a)(5) provides that '[i]t shall be unlawful for any person to refuse or fail to make, keep, or furnish' records." *Clinical Leasing*, 759 F. Supp. at 313. Echoing *Moore*, the Court in *Clinical Leasing* stated: "Had Congress intended to limit the applicability of § 842(a)(5) to registrants only, it would have done so, as it did in §§ 842(a)(2) and (3)." *Id.* at 314.

In both *Stidman* and *Poulin*, the courts reached the same conclusion that the Act's recordkeeping provision applied to all persons, not merely registrants. In those cases, the courts found that owners of the facilities that dispensed controlled substances could be held liable under the Act. In those cases, the courts also found the owners essentially operated the facilities on a daily basis and were not exempted from the recordkeeping requirements. *Stidman*, 938 F. Supp. at 809,

814; *Poulin*, 926 F. Supp. at 249, 255.

Like the defendants in *Stidman* and *Poulin*, the Complaint here alleges McAllister owned the Center that handled controlled substances and she had the authority and responsibility for maintaining the Center's controlled substance records. The Complaint also alleges McAllister made ordering decisions, transferred drugs between the Coconut Grove Center and her other Tampa Center, and that she verified quantities. These allegations sufficiently state a claim under section 842(a)(5). Because she is alleged to have had responsibility over the controlled substances, the Court can find her liable for violating the Act's recordkeeping provisions.

McAllister also suggests that she cannot be found liable because she was merely the Center's representative. This argument misses the mark. In *Poulin* and *Stidman*, the courts found individual owners liable under sections 842(a)(5) even where the corporate entity was the registrant. Where corporate officers have been in a position to prevent or correct the violations at issue, courts have found that there is individual liability under the subsection, which plainly applies to all "persons." 21 U.S.C. § 842(a)(5).

Putting aside the language of the Act, the intent of the Controlled Substances Act also favors a finding that section 842(a)(5) applies to McAllister. The Eleventh Circuit explained that "Congress was particularly concerned with the diversion of drugs from legitimate channels to illegitimate channels." *Blanton*, 730 F.2d at 1427 (quoting *United States v. Moore*, 423 U.S. at 135). The recordkeeping requirements allow the DEA "to closely monitor the flow of controlled substances from manufacturer to the hands of the consumer." *Id.* at 1427-28. To accept McAllister's argument that the Act does not apply to her, even though she was responsible for the drugs, would eviscerate the goal of ensuring the movement of drugs is closely controlled. Congress addressed that loophole

by applying section 842(a)(5) to "any person." Accordingly, the Court finds that McAllister is properly named as a defendant and she could be found liable under section 842(a)(5).

DONE AND ORDERED in Chambers at Miami, Florida, this /0 day of September, 2012.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record